IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)

| | |
|---|---|
| BROCK USA, LLC, d/b/a BROCK INTERNATIONAL LLC, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| NEXXFIELD INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Brock USA, LLC, d/b/a Brock International LLC ("Brock") makes the following claims for relief against Defendant Nexxfield Inc. ("Nexxfield").

## NATURE OF THE ACTION

1.     This is an action by Brock against Nexxfield for infringement of the following United States Patents: U.S. Patent No. 8,236,392, titled "Base for Turf System" ("the 392 patent"); U.S. Patent No. 8,353,640, titled "Load Supporting Panel Having Impact Absorbing Structure" ("the 640 patent"); U.S. Patent No. 8,568,840, titled "Base for Turf System" ("the 840 patent"); U.S. Patent No. 8,603,601, titled "Base for Turf System" ("the 601 patent"); U.S. Patent No. 8,668,403, titled "Load Supporting Panel Having Impact Absorbing Structure" ("the 403 patent"); and U.S. Patent No. 8,967,906, titled "Underlayment Panel Having Drainage Channels" ("the 906 patent"). These patents are collectively referred to as the "Asserted Brock Patents."

2.    As explained below, Nexxfield has directly infringed the Asserted Brock Patents by using, offering for sale, selling and importing "NexxPAD" turf underlayment panels ("NexxPAD panels") in the United States, and Nexxfield has indirectly infringed the Asserted Brock Patents by, among other things, importing and providing, and encouraging, instructing, and assisting others to use, the NexxPAD panels, knowing that such actions result in infringement of the Asserted Brock Patents.

3.    NexxPAD panels are marketed, offered for sale and sold in direct competition with Brock's patented turf underlayment panels.

<u>THE PARTIES</u>

4.    Brock is a limited liability corporation organized and existing under the laws of the State of Colorado, with its principal place of business at 3090 Sterling Circle, Suite 102, Boulder, Colorado 80301.

5.    Nexxfield is a corporation organized and existing under the laws of Quebec, Canada, with its principal place of business at 9020 Parkway Boulevard, Anjou QC H1J 1N5, Quebec, Canada. Nexxfield's affiliate, Nexxfield USA, is located in Dalton, Georgia.

<u>JURISDICTION AND VENUE</u>

6.    This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.    This Court has personal jurisdiction over Nexxfield based on Nexxfield's tortious acts of patent infringement, which have been committed in the State of

Illinois, including in this judicial district, and Nexxfield's regular and systematic transaction of business in the State of Illinois, including in this judicial district.

8. For example, Nexxfield has sold and provided a substantial number of infringing NexxPAD panels to First Form Inc. ("First Form"), which is located at 4320 Winfield Road, Suite 200, Warrenville, Illinois 60555, for resale, distribution and/or installation in the United States.

9. The NexxPAD panel is prominently featured on First Form's website at www.firstform.com:



10. The "Featured Projects" portion of First Form's website identifies NexxPAD installations in the United States through and by First Form.

11. MTJ Sports is Nexxfield's exclusive certified distributor and installer of Nexxfield products for the Midwest region in the United States, including the NexxPAD panel. MTJ Sports is located at 10 Edgewood Drive, Kewanee, Illinois 61443. According to MTJ Sports' website at www.mtjsports.com, MTJ Sports is the "Exclusive Midwest Distributor for NEXXFIELD."

12. As a foreign resident, Nexxfield may be sued in any judicial district.

13. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and (d), and 1400(b).

## FACTUAL BACKGROUND

14. Brock was founded in 1998 by Daniel Sawyer. The company initially focused on the design, development and commercialization of impact protection material for the athletic equipment and the outdoor backpacking/sport equipment industries. This work resulted in an impact protection and body cooling padding called "Brock Foam." Brock later expanded its focus to underlayment products and designed, developed and commercialized the Brock Base System line of products, which includes Performance Base® underlayment, Performance Base® F Series underlayment, PowerBase® underlayment and PowerBase® YSR underlayment for artificial turf; PlayBase® underlayment for playgrounds; and PaverBase® underlayment for hardscape and driveway applications.

15. Performance Base underlayment is a padding formed by gluing together resilient closed-cell polymer beads. Interstitial spaces between the beads make the padding porous and breathable such that air and liquids can freely pass though the padding. Performance Base underlayment was commercially introduced in 2004.

16.     Brock continued its work on underlayment technologies, and designed and developed interconnecting underlayment panels formed from resilient closed-cell polymer beads that are molded and fused together to form a water-impervious composite. The panels generally include a core, a top side and a bottom side, channels on their top and bottom sides and drain holes that connect the top channels with the bottom channels.  This technology was commercialized in Performance Base F Series underlayment in Europe in 2007, PowerBase underlayment in the United States in 2009, PlayBase underlayment in 2009, PaverBase underlayment in 2010 and PowerBase YSR underlayment in 2011.

17.     Brock has received 12 patents for its underlayment innovations and has numerous pending United States and foreign patent applications.

18.     The Asserted Brock Patents have been commercialized in the Brock Performance Base F Series, Brock PowerBase and Brock PowerBase YSR products. Millions of square feet of these products have been installed.

19.     The U.S. Patent and Trademark Office ("USPTO") duly issued the 392 patent on August 7, 2012. The named inventors on the 392 patent are Steven Sawyer, Daniel Sawyer and Richard Runkles. Steven Sawyer, Daniel Sawyer and Mr. Runkles assigned all of their rights in and to the 392 patent to Brock. Brock owns all right, title and interest in and to the 392 patent, including the rights to sue for infringement and to seek monetary damages and injunctive relief.

20.     The 392 patent issued from U.S. Patent Application No. 12/009,835, which was filed on January 22, 2008 ("the 835 application"). The 835 application claims priority to U.S. Provisional Application No. 60/881,293, filed on January 19,

2007; U.S. Provisional Application No. 60/927,975, filed on May 7, 2007; U.S. Provisional Application No. 61/000,503, filed on October 26, 2007; and U.S. Provisional Application 61/003,731, filed on November 20, 2007.

21.    The 392 patent includes eight claims. Claim 2 of the 392 patent states as follows:

> An underlayment layer configured to support an artificial turf assembly, the underlayment layer comprising a panel having edges, the panel including a core with a top side and a bottom side, the top side having a plurality of spaced apart, upwardly oriented projections that define channels suitable for water flow along the top side of the core when the underlayment layer is positioned beneath an overlying artificial turf assembly and the bottom side includes a plurality of spaced apart, downwardly oriented projections that define channels suitable for water flow, and wherein bottom side projections adjacent to the edges are arranged to form channels having a wider spacing at the edges than at locations spaced away from the edges, the wider spaced channel edges of adjacent panels being capable of being assembled together enabling a substantially continuous channel suitable for water flow between adjacent panels.

22.    The USPTO duly issued the 640 patent on January 15, 2013. The named inventor on the 640 patent is Steven Sawyer. Mr. Sawyer assigned all of his rights in and to the 640 patent to Brock. Brock owns all right, title and interest in and to the 640 patent, including the rights to sue for infringement and to seek monetary damages and injunctive relief.

23.    The 640 patent issued from U.S. Patent Application No. 13/025,745 ("the 745 application"). The 745 application is a continuation-in-part of the 392 patent and U.S. Patent Application No. 12/830,902, which was filed on July 6, 2010, and which issued as U.S. Patent No. 8,662,787 on March 4, 2014. Additionally, the 640 patent

claims priority to U.S. Provisional Application No. 61/303,350, which was filed on February 11, 2010.

24.     The 640 patent includes 19 claims. Claim 1 of the 640 patent states as follows:

> An impact absorption panel having a top surface and a bottom surface, the top surface including a plurality of drainage channels that are in fluid communication with a plurality of drain holes, the plurality of drain holes connecting the top surface drainage channels with a plurality of bottom surface channels, the bottom surface channels being defined by sides of a plurality of adjacent projections disposed across the bottom surface and projecting downwardly.

25.     The USPTO duly issued the 840 patent on October 29, 2013. The named inventors on the 840 patent are Steven Sawyer, Daniel Sawyer and Richard Runkles. Steven Sawyer, Daniel Sawyer and Mr. Runkles assigned all of their rights in and to the 840 patent to Brock. Brock owns all right, title and interest in and to the 840 patent, including the rights to sue for infringement and to seek monetary damages and injunctive relief.

26.     The 840 patent issued from U.S. Patent Application No. 13/568,611, which was filed on August 7, 2012 ("the 611 application"). The 611 application is a continuation of the 392 patent. The 611 application claims priority to U.S. Provisional Application No. 60/881,293, filed on January 19, 2007; U.S. Provisional Application No. 60/927,975, filed on May 7, 2007; U.S. Provisional Application No. 61/000,503, filed on October 26, 2007; and U.S. Provisional Application 61/003,731, filed on November 20, 2007.

27.     The 840 patent includes 24 claims. Claim 1 of the 840 patent states as follows:

A turf underlayment layer having panels including a top side having a plurality of projections, a bottom side having a plurality of projections, and panel edges, the plurality of top side projections forming top side channels and the bottom side projections forming bottom side channels, the panel edges configured to abut edges of adjacent panels, the panels further including a plurality of drain holes dispersed over the panel surfaces for fluid communication between the top side and the bottom side of the panel, the drain holes positioned to intersect both the top side and bottom side channels to connect the top side channels to the bottom side channels, wherein the panels are made from a plurality of polyolefin beads, the plurality of polyolefin beads bonded together by at least one of pressure and heat to produce a substantially water-impervious surface.

28. The USPTO duly issued the 601 patent on December 10, 2013. The named inventors on the 601 patent are Steven Sawyer, Daniel Sawyer and Richard Runkles. Steven Sawyer, Daniel Sawyer and Mr. Runkles assigned all of their rights in and to the 601 patent. Brock owns all right, title and interest in and to the 601 patent, including the rights to sue for infringement and to seek monetary damages and injunctive relief.

29. The 601 patent issued from U.S. Patent Application No. 13/711,688, which was filed on December 12, 2012 ("the 688 application"). The 688 application is a continuation of the 840 patent. The 688 application claims priority to U.S. Provisional Application No. 60/881,293, filed on January 19, 2007; U.S. Provisional Application No. 60/927,975, filed on May 7, 2007; U.S. Provisional Application No. 61/000,503, filed on October 26, 2007; and U.S. Provisional Application 61/003,731, filed on November 20, 2007.

30. The 601 patent includes 13 claims. Claim 1 of the 601 patent states as follows:

A turf underlayment layer for supporting an artificial turf assembly, the turf underlayment layer comprising a plurality of panels assembled together, each panel including a core, a top side having a plurality of projections, and a bottom side, the top projections forming top side water drainage channels, the panels having edges, with the edges of one panel abutting the edges of adjacent panels, at least one of the panel edges having at least one drainage projection, the drainage projection spacing the abutting panel edges apart, with the resultant spacing of the edges of abutting panels forming a drainage path at the intersection of the abutting panels, wherein the panels are made from a plurality of polyolefin beads, the plurality of polyolefin beads bonded together by at least one of pressure and heat to produce a substantially water-impervious surface.

31.     The USPTO duly issued the 403 patent on March 11, 2014. The named inventor on the 403 patent is Steven Sawyer. Mr. Sawyer assigned all of his rights in and to the 403 patent to Brock. Brock owns all right, title and interest in and to the 403 patent, including the rights to sue for infringement and to seek monetary damages and injunctive relief.

32.     The 403 patent issued from U.S. Patent Application No. 13/741,953, which was filed on January 15, 2013 ("the 953 application"). The 953 application is a continuation of the 640 patent. The 611 application claims priority to U.S. Provisional Application No. 61/303,350, filed on February 11, 2010.

33.     The 403 patent includes 20 claims. Claim 1 of the 403 patent states as follows:

An impact absorption underlayment panel having a top surface, a bottom surface, and edges, the top surface having a plurality of projections that define top drainage channels, the bottom surface having a plurality of bottom projections that define drainage channels, the edges having at least one standout spacer arranged to form a gap with an adjacent panel, the gap being configured to provide fluid communication with the bottom side drainage channels, the panel further having a plurality of drain holes arranged on the panel, the plurality of drain holes providing fluid communication between the top

surface and the drainage channels of the bottom surface, wherein the panel has a resilient characteristic that provides for deflection under load sufficient to impart impact absorption to the panel.

34.    The USPTO duly issued the 906 patent on March 3, 2015. The named inventor on the 906 patent is Steven Sawyer. Mr. Sawyer assigned all of his rights in and to the 906 patent to Brock. Brock owns all right, title and interest in and to the 906 patent, including the rights to sue for infringement and to seek monetary damages and injunctive relief.

35.    The 906 patent issued from U.S. Patent Application No. 14/204,700, which was filed on March 11, 2014 ("the 700 application"). The 700 application is a continuation of the 403 patent. The 700 application claims priority to U.S. Provisional Application No. 61/303,350, filed on February 11, 2010.

36.    The 906 patent includes 20 claims. Claim 1 of the 906 patent states as follows:

An underlayment panel having a top surface, a bottom surface, and edges, the top surface having a plurality of projections that define top drainage channels, the bottom surface having a plurality of bottom projections that define bottom drainage channels, the edges having at least one standout. spacer arranged to form a gap with an adjacent panel, the gap being configured to provide fluid communication between the top drainage channels and the bottom drainage channels, the panel further having a plurality of drain holes arranged on the panel, the plurality of drain holes providing fluid communication between the top surface and the bottom drainage channels.

37.    Brock owns pending U.S. Patent Application No. 13/711,689, which is titled "Base for Turf System" and was filed on December 12, 2012. U.S. Patent Application No. 13/711,689 is a continuation of the 840 patent. Brock also owns allowed U.S. Patent Application No. 14/636,719, which is titled "Underlayment Panel

Having Drainage Channels" and was filed on March 3, 2015. U.S. Patent Application No. 14/636,719 is a divisional patent application of the 906 patent.

38.     Claim 1 of allowed U.S. Patent Application 14/636,719 states as follows:

An underlayment panel comprising: a panel section having a plurality of drain holes formed therethrough; a top surface configured to support at least a layer of loose infill material, the top side further including a texture that maintains the general position of the loose infill material on the top surface; and a bottom surface having a plurality of projections that cooperate to define channels suitable to permit water flow across the bottom surface, the channels being in fluid communication with the panel drain holes, the projections having tapered sides such that the bottom side channels will retain up to 25 mm of water for a slower release rate into a substrate than a drainage rate across the channels.

## THE ACTS OF PATENT INFRINGEMENT

39.     Nexxfield has designed NexxPAD panels for installation in the United States.

40.     Nexxfield has manufactured NexxPAD panels for installation in the United States.

41.     Nexxfield has marketed NexxPAD panels for installation in the United States.

42.     Nexxfield has promoted NexxPAD panels for installation in the United States.

43.     Nexxfield has provided NexxPAD panels to third parties for installation in the United States.

44.     Nexxfield has used NexxPAD panels in the United States.

45.     Nexxfield has offered to sell NexxPAD panels in the United States.

46.     Nexxfield has sold NexxPAD panels in the United States.

47.     Nexxfield has imported NexxPAD panels into the United States.

48.     Nexxfield has assisted Hellas Construction, Inc. ("Hellas") in marketing, offering for sale, selling and providing NexxPAD panels in the United States.

49.     Nexxfield has agreed to provide, sell and/or otherwise supply NexxPAD panels to Hellas for installation in the United States.

50.     Nexxfield has agreed to provide, sell and/or otherwise supply NexxPAD panels to Hellas for installation in an athletic field for the City of Avalon, California.

51.     Nexxfield has agreed to provide, sell and/or otherwise supply NexxPAD panels to Hellas for installation in an athletic field at Santa Lucia Middle School in Cambria, California.

52.     Nexxfield customers have resold, offered to sell and/or used NexxPAD panels in the United States.

53.     Third parties have resold, offered to sell and/or used NexxPAD panels in the United States.

54.     Nexxfield has marketed NexxPAD panels in the United States.

55.     At its website, www.nexxfield.com, Nexxfield promotes and advertises its NexxPAD panels to customers in the United States.

56.     On Nexxfield's website, www.nexxfield.com, third parties in the United States can request quotes for NexxPAD panels.

57.     Nexxfield has marketed, promoted, sold and offered to sell NexxPAD panels in the United States through MTJ Sports.

58.     Nexxfield has assisted MTJ Sports in using, marketing, promoting, offering to sell, and selling NexxPAD panels in the United States.

59.     Nexxfield has offered to sell and sold NexxPAD panels in the United States to First Form.

60.     The NexxPAD panels offered for sale and sold to First Form by Nexxfield have been installed in at least one athletic field at IMG Academy in Bradenton, Florida, and in at least one athletic field for the Richland County School District One in Columbia, South Carolina.

61.     Nexxfield imported NexxPAD panels into the United States that were installed in at least one athletic field at IMG Academy in Bradenton, Florida, and in at least one athletic field for the Richland County School District One in Columbia, South Carolina.

62.     Nexxfield has entered into agreements to provide NexxPAD panels for resale, distribution and/or installation in the United States.

63.     Nexxfield has entered into agreements with First Form to provide NexxPAD panels for installation in at least one athletic field at IMG Academy in Bradenton, Florida, and in at least seven athletic fields for the Richland County School District One in Columbia, South Carolina.

64.     Nexxfield has provided NexxPAD panels to First Form for resale, distribution and/or installation in the United States.

65.     The NexxPAD panels provided by Nexxfield to First Form were installed in at least one athletic field at IMG Academy in Bradenton, Florida, and in at least one athletic field for the Richland County School District One in Columbia, South Carolina.

66.     Nexxfield has assisted third parties in installing NexxPAD panels in the United States.

67.     Nexxfield assisted First Form in installing NexxPAD panels in at least one athletic field for IMG Academy in Bradenton, Florida, and at least one athletic field for the Richland County School District One in Columbia, South Carolina.

68.     The NexxPAD panel is configured to support an artificial turf assembly.

69.     In use, the NexxPAD panel forms a turf underlayment layer.

70.     The NexxPAD panel provides for deflection under a load sufficient to impart impact absorption to the panel.

71.     The NexxPAD panel has edges.

72.     The NexxPAD panel has a top side.

73.     The NexxPAD panel has a bottom side.

74.     The top side of the NexxPAD panel has two or more upwardly oriented projections that are spaced apart.

75.     The bottom side of the NexxPAD panel has two or more downwardly oriented projections that are spaced apart.

76.     The upwardly oriented projections on the top side of the NexxPAD panel define channels that allow water to flow along the top side of the panel.

77.     The downwardly oriented projections on the bottom side of the NexxPAD panel define channels that are suitable for water flow.

78.     The NexxPAD panel has projections on its bottom side that are adjacent to the panel's edges.

79.     The bottom side projections that are adjacent to the edges of the NexxPAD panel form channels that have a wider spacing at the edges than at locations spaced away from the edges.

80.     In the NexxPAD panel, the wider spaced channel edges of adjacent panels are capable of being assembled together to enable a substantially continuous channel suitable for water flow between adjacent panels.

81.     The NexxPAD panel absorbs impact.

82.     The NexxPAD panel has a top surface.

83.     The NexxPAD panel has a bottom surface.

84.     The NexxPAD panel has a top surface with two or more drainage channels that are in fluid communication with two or more drain holes.

85.     The NexxPAD panel's drain holes connect the drainage channels on the top surface of the panel with two or more drainage channels on the bottom surface of the panel.

86.     The NexxPAD panel has edges that are configured to abut the edges of adjacent panels.

87.     The NexxPAD panel has drain holes dispersed over the panel surfaces for fluid communication between the top side and the bottom side of the panel.

88.     The NexxPAD panel has drain holes that intersect the channels on the top side and the bottom side of the panel.

89.     The NexxPAD panel is made from a molded, expanded bead polyolefin material.

90.     The NexxPAD panel is made from polyolefin beads that are bonded together by pressure or heat.

91.     The surface of the NexxPAD panel is water impervious.

92.     The NexxPAD panel is between 20-33 millimeters thick.

93.     The density of the NexxPAD panel's molded material is in the range of 45-70 grams per liter.

94.     The density of the NexxPAD panel's molded material is in the range of 50-70 grams per liter.

95.     At least one of the edges of the NexxPAD panel has a projection that spaces abutting panel edges apart to form a drainage path at the intersection of the abutting panels.

96.     The NexxPAD panel has projections on the top side and the bottom side that terminate in generally flat support surfaces.

97.     In the NexxPAD panel, the flat support surfaces of the projections on the top side have smaller surface areas than the flat support surfaces of the projections on the bottom side.

98.     Nexxfield has infringed at least claim 2 of the 392 patent, at least claim 1 of the 640 patent, at least claim 1 of the 840 patent, at least claim 1 of the 601 patent, at least claim 1 of the 403 patent and at least claim 1 of the 906 patent under 35 U.S.C. § 271(a) by using, offering for sale, selling, and importing NexxPAD panels in the United States.

99.     Nexxfield has actively induced infringement of at least claim 2 of the 392 patent, at least claim 1 of the 640 patent, at least claim 1 of the 840 patent, at

least claim 1 of the 601 patent, at least claim 1 of the 403 patent and at least claim 1 of the 906 patent under 35 U.S.C. § 271(b) by selling, marketing, importing and providing, and encouraging, instructing and aiding others to use, sell or offered to sell NexxPAD panels in the United States in a manner that directly infringes one or more claims of each of the Asserted Brock Patents. Such direct infringers include individuals at First Form and other individuals who have installed, resold, offered for sale or used NexxPAD panels in the United States. Nexxfield has engaged in these activities with knowledge of the Asserted Brock Patents, actual notice of its infringement of the Asserted Brock Patents and specific intent to induce infringement.

100.    For example, before this suit was filed, Brock had extensive verbal and written communications with Nexxfield in which Brock made Nexxfield aware of the Asserted Brock Patents, and asserted that they cover the NexxPAD panel. Brock provided a chart that applied claim 1 of the 840 patent to the NexxPAD panel, and requested that Nexxfield voluntarily cease and desist from its infringing activities. Nexxfield did not comply with Brock's request, and it has continued to engage in its infringing activities.

101.    Nexxfield has contributed to the infringement of at least claim 2 of the 392 patent, at least claim 1 of the 640 patent, at least claim 1 of the 840 patent, at least claim 1 of the 601 patent, at least claim 1 of the 403 patent and at least claim 1 of the 906 patent by selling, importing and providing, and encouraging, instructing and aiding others to use, offer for sale or sell NexxPAD panels in the United States in a manner that directly infringes one or more claims of each of the Asserted Brock

Patents. Such direct infringers include individuals at First Form Inc. and other individuals who have installed, resold, offered for sale or used   NexxPAD panels in the United States. Nexxfield has engaged in these activities with knowledge of the Asserted Brock Patents, and with knowledge that NexxPAD panels are especially made and adapted for use, and are in fact used, in a manner that constitutes infringement of the Asserted Brock Patents.

102.   The NexxPAD panel constitutes a material part of the inventions described and claimed in the Asserted Brock Patents.

103.   The NexxPAD panel is not a staple article or commodity of commerce suitable for substantial non-infringing uses.

104.   Brock has complied with the marking and notice requirements of 35 U.S.C. § 287.

105.   Nexxfield's infringement of the Asserted Brock Patents has injured, and continues to injure, Brock.

106.   Brock is entitled to recover damages adequate to compensate Brock for Nexxfield's infringement of the Asserted Brock Patents in an amount that is no less than a reasonable royalty, under 35 U.S.C. § 284.

107.   Brock will continue to be injured unless and until the Court issues an injunction that prohibits further direct and indirect infringement by Nexxfield.

108.   Nexxfield's infringement of the Asserted Brock Patents has been, and continues to be, willful, wanton, malicious, in bad faith, deliberate, consciously wrongful and flagrant. Nexxfield has used, offered for sale, provided, sold, and imported NexxPAD panels in the United States, and has encouraged, aided and

assisted third parties, including First Form, to install NexxPAD panels in the United States, although Nexxfield knew that its actions would constitute and result in infringement of the Asserted Brock Patents. Accordingly, this constitutes an egregious case of infringement typified by willful misconduct.

109.    This is an "exceptional case" under 35 U.S.C. § 285 because it stands out from others with respect to the lack of substantive strength of Nexxfield's positions. Accordingly, Brock is entitled to an award of its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Brock requests that a judgment be entered as follows:

A.      An injunction prohibiting Nexxfield, and all those acting in concert or participation with Nexxfield, from further acts of infringement of the Asserted Brock Patents;

B.      An award to Brock of such damages as it can prove at trial against Nexxfield adequate to fully and adequately compensate Brock for the acts of infringement that have occurred, said damages to be no less than a reasonable royalty;

C.      An award to Brock for any damages so determined that are found for willful infringement under 35 U.S.C. § 284, together with prejudgment interest;

D.      A finding that this case is "exceptional" under 35 U.S.C. § 285, and an award to Brock of its attorneys' fees and other expenses of litigation;

E.      Such other relief as this Court and the jury may determine to be proper and just.

## DEMAND FOR TRIAL BY JURY

In accordance with Fed.R.Civ.P. 38, Brock hereby requests a trial by jury of all issues properly triable to a jury in this case.

Respectfully submitted,

*/s/David J. Sheikh*
David J. Sheikh
Christopher J. Lee
Richard B. Megley, Jr.
Joseph A. Culig
Ashley E. LaValley
LEE SHEIKH MEGLEY & HAAN
1 North Franklin Street, Suite 3340
Chicago, IL 60606
Phone:    312.982.0062
Fax:        312.982.0071
Email:     dsheikh@leesheikh.com
                clee@leesheikh.com
                rmegley@leesheikh.com
                jculig@leesheikh.com
                alavalley@leesheikh.com

*Attorneys for Plaintiff*
*Brock USA, LLC, d/b/a Brock*
*International LLC*